Filed 10/21/13  P. v. Pellerin CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Nevada)

----

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C072654 |
| v. | (Super. Ct. No. F10159) |
| GREGORY PELLERIN, | |
| Defendant and Appellant. | |

Defendant Gregory Pellerin was charged with assault by means likely to produce great bodily injury (Pen. Code, § 245, subd. (a)(1)),[1] battery with serious bodily injury (§ 243, subd. (d)), and false imprisonment by violence, a misdemeanor (§ 236).  The charges were eventually dismissed in the interests of justice (§ 1385) on the People's motion.

---

[1]     Undesignated statutory references are to the Penal Code.

1

Defendant filed a petition to declare him innocent of the charges and to seal and destroy the record of his arrest (§ 851.8, subd. (c)). The trial court denied the petition. On appeal, defendant contends the trial court erred in denying his petition. We conclude defendant did not carry his burden of establishing there was no reasonable cause to prosecute him. Accordingly, we affirm the judgment.

FACTS[2]

On April 20, 2010, Nevada County Sheriff's Deputy Jennifer Blix was dispatched to defendant's home to investigate an altercation. When she arrived, Thomas Benzing was curled up with his knees under him, like he was in a fetal position. One side of his face was on the pavement, while one of his arms was "twisted pretty high in the sky." Defendant was straddling over Benzing with one of his knees on Benzing's back while he twisted Benzing's arm upwards. Defendant's wife was standing nearby with a video recorder. Deputy Blix told defendant to get off of Benzing. Defendant did not comply until Deputy Blix reiterated her order and grabbed defendant by the arm. One side of Benzing's face was bloody, and he remained on the ground as he moaned and groaned in pain. Benzing got up a few minutes later. Defendant is 6 feet 1 inch tall and weighs about 250 pounds. Benzing is 5 feet 10 inches tall and weighs about 185 pounds.

About 10-15 minutes later, John Schema, the owner of the property, arrived at the scene. Deputy Blix interviewed Schema. Schema owned the residence that defendant and his wife were renting. Schema had asked Benzing to serve "some sort of civil paperwork" because Schema was not allowed onto the property.

Deputy Jesse King testified that defendant and Benzing were separated by the time he arrived. Defendant's wife told him one of Schema's friends served a civil paper on

---

[2] The facts are taken from the evidentiary hearing held on defendant's petition to declare him innocent of the charges.

2

their doorstep. When defendant tried to arrest the man for trespassing in violation of a restraining order, the man hit defendant. Defendant then restrained the man until the deputies arrived.

Defendant told Deputy King he believed he was being served with papers in violation of the restraining order. The person serving the papers, Benzing, refused to identify himself when asked. Defendant tried to make a citizen's arrest, but Benzing fled and tried to resist. Defendant ran after him so he could see whether Schema was nearby.

Defendant told Deputy King that Benzing assaulted him when he was going up the driveway to see if Schema was there. Defendant said Benzing elbowed or shouldered him and he felt like he was going to get knocked over. He then took Benzing to the ground and pinned him until law enforcement officers arrived. He put Benzing in an arm lock because Benzing was resisting the citizen's arrest. Defendant arrested Benzing by putting him on the ground and holding him there through a combination of the arm lock and his body weight. Defendant appeared to be wet and muddy, which was consistent with his coming into contact with the ground.

Deputy Brett Lacosse spoke to Benzing, who accused defendant of assaulting him. He did not take a written or recorded statement from Benzing because Deputy Blix had already done so. He photographed the injuries to defendant and Benzing, which were admitted into evidence.

Defendant's wife told Deputy King she had filmed the incident on a video camera. She showed the camera to Deputy King, who took it and viewed the recordings. The video was transferred to several files and admitted into evidence. After watching the video, Deputy King believed Benzing. Based on the video, the parties' statements, and his and the other deputies' observations, he arrested defendant for felony battery with serious bodily injury.

Benzing was transported to the hospital in an ambulance. He sustained a mild abrasion to the left cheek, a three-centimeter laceration to his right elbow with abrasion, and a sprained left shoulder. The elbow laceration required "simple interrupted non-abosorbable sutures."

Testifying, defendant related his history with Schema. He and his wife had rented their residence from Schema. Schema had several property disputes with defendant. One dispute resulted in defendant obtaining a $6,000 unlawful detainer judgment against Schema.

Schema would "show up at odd hours of the day and night" and would "beat[] on the door" when defendant's children were home. Defendant obtained a court order restraining Schema from entering the property, which Schema violated in person or through his friends. On August 3, 2009, defendant obtained a new order forbidding Schema from being on the property and requiring contact with defendant to be in writing, via e-mail, or through attorneys. In spite of the order, Schema visited the property personally or through agents six times. Schema would park his car at the top of the driveway behind a clump of trees when he visited.

When one of Schema's friends showed up to serve papers, defendant reported the incident to a sheriff's deputy, who said defendant was authorized to make a citizen's arrest for trespassing and violating a court order. Defendant then exchanged e-mails with Schema, warning him that any agent of his entering the property would be arrested. Schema said he would serve papers on defendant.

On the day of the incident defendant was at home preparing an e-mail to Schema when he heard a pounding on the door. He opened the door and saw a man he did not recognize, whom he later identified as Benzing. When defendant stepped outside and

4

asked who he was, Benzing responded with an expletive.  Benzing said he was leaving papers and would not identify himself.

Defendant wanted to see if Schema was parked in his normal spot; both he and Benzing started walking toward the end of the driveway.  As defendant jogged around Benzing, Benzing stopped, turned, and put his shoulder into defendant's chest, knocking him off balance.  Defendant told Benzing he was under citizen's arrest for assault, trespassing, and violating a court order.  After defendant warned Benzing he would take him down if he touched defendant again, Benzing said, "screw you."

Defendant then continued to jog around Benzing, who jogged until Benzing passed defendant, and then turned around and swung at him.  When defendant held up his hands to avoid contact, Benzing put his head down, grabbed defendant, and took him to the ground.  He fell on defendant, and caused defendant to fear for his safety.  Defendant rolled over on Benzing and put him in an arm lock.  After defendant told Benzing to stop resisting and that he was under citizen's arrest for trespassing, violating a court order, and two assaults, Benzing "continuously" attacked him.  When defendant would ease the hold, Benzing would try to get away.  He intended to detain Benzing rather than injure him.

According to defendant, Benzing caused him anxiety, fear, and "loss of intimacy." Following the incident, defendant filed an order to show cause for contempt against Schema, which was granted.

Among the exhibits submitted by defendant were (1) police photographs showing abrasions to his hands, knee, and elbow, as well as torn and muddy clothing; (2) the crime/incident reports, which, among other things, related that the place where defendant held Benzing was about 200 feet from the residence and about 50 feet from the street; (3) a transcript of defendant's interview with law enforcement officers following the

incident; (4) a copy of the protective order prohibiting Schema and defendant from contacting each other except for necessary communication done in writing or through a professional third party; and (5) a transcript of August 16, 2010, proceedings in which the Nevada County Superior Court found Schema in contempt for violating the no-contact order several times, including on April 20, 2010.

## PROCEDURAL HISTORY

After the charges were dismissed, defendant filed a petition asking the trial court to declare him factually innocent pursuant to section 851.8, subdivision (c). The trial court held a two-day evidentiary hearing. The trial court denied the petition. After considering all the evidence presented at the hearing, the court concluded defendant had not met his difficult burden of proof that no reasonable cause exists to believe he committed the offense for which the arrest was made.

## DISCUSSION

Defendant contends the trial court erred in denying his petition to declare him innocent of the charges stemming from the April 20, 2010, incident at his residence. We reject the contention.

"In any case where a person has been arrested, and an accusatory pleading has been filed, but where no conviction has occurred, the defendant may, at any time after dismissal of the action, petition the court that dismissed the action for a finding that the defendant is factually innocent of the charges for which the arrest was made. . . . The hearing shall be conducted as provided in subdivision (b)." (§ 851.8, subd. (c).)

"A finding of factual innocence and an order for the sealing and destruction of records pursuant to this section shall not be made unless the court finds that no reasonable cause exists to believe that the arrestee committed the offense for which the arrest was made. In any court hearing to determine the factual innocence of a party, the

6

initial burden of proof shall rest with the petitioner to show that no reasonable cause exists to believe that the arrestee committed the offense for which the arrest was made. If the court finds that this showing of no reasonable cause has been made by the petitioner, then the burden of proof shall shift to the respondent to show that a reasonable cause exists to believe that the petitioner committed the offense for which the arrest was made." (§ 851.8, subd. (b).)

" ' " 'Reasonable cause' " ' is a well-established legal standard, ' "defined as that state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of a crime." ' [Citations.] To be entitled to relief under section 851.8, '[t]he arrestee [or defendant] thus must establish that facts exist which would lead no person of ordinary care and prudence to believe or conscientiously entertain any honest and strong suspicion that the person arrested [or acquitted] is guilty of the crimes charged. [Citation.]' [Citation.]" (*People v. Adair* (2003) 29 Cal.4th 895, 904 (*Adair*).) Section 851.8 establishes "an objective standard for assaying factual innocence." (*Id.* at p. 905.) We review de novo the trial court's ruling on defendant's petition. (*Id.* at p. 908.)

Defendant bears a heavy burden in petitioning for a finding that he is innocent. " ' "[F]actually innocent" as used in [section 851.8(b)] does not mean a lack of proof of guilt beyond a reasonable doubt or even by "a preponderance of evidence." [Citation.]' [Citation.] Defendants must 'show that the state should never have subjected them to the compulsion of the criminal law -- because no objective factors justified official action . . . .' [Citation.] In sum, the record must exonerate, not merely raise a substantial question as to guilt." (*Adair, supra*, 29 Cal.4th at p. 909.) Furthermore, probable cause or reasonable cause is a "fluid concept" that does not even require a prima facie case of the defendant's guilt. (*Illinois v. Gates* (1983) 462 U.S. 213, 232, 235.)

7

While there are conflicting stories on who was the aggressor in this fight, there is no dispute that a fight occurred. When Deputy Blix arrived, defendant had Benzing on the ground, in an arm lock, and did not release him at her first command. Defendant claimed Benzing assaulted him as he went up the driveway to see if Schema was there. Defendant took Benzing to the ground as he placed him under citizen's arrest, and put Benzing in an arm lock because he was resisting. Defendant's testimony was largely consistent with his statement to the officers, providing more detail and showing two assaults. By contrast, Benzing told the officers defendant assaulted him. Benzing was in serious pain and had sustained a sprained shoulder and a wound requiring sutures.

Defendant and the People rely on the video evidence to support their position on who was the aggressor and whether defendant used excessive force against Benzing. In sum, the video evidence shows defendant chasing Benzing, Benzing turning around toward defendant, and defendant taking Benzing to the ground and holding him in an arm lock. The first DVD, People's Exhibit A, shows defendant standing over Benzing, who is seated on the ground, putting an arm lock on Benzing's left arm. Benzing and a woman in the background, defendant's wife, exchange insults. Defendant's wife, who was apparently on the telephone to law enforcement officers, states Benzing turned around and hit defendant. Benzing says he was trying to run away and "this guy chased me down the driveway." Defendant's wife then continues her phone call to law enforcement while defendant maintains the arm lock on Benzing. The second DVD, People's Exhibit B, has four video files. The first file begins with a long distance shot showing defendant chasing after Benzing as Benzing runs up a long driveway. Within a few seconds, Benzing appears to turn to defendant and the two men appear to raise their arms. Defendant then grabs onto Benzing and starts to pull him down while an exclamation is heard. The camera next pans down to the feet of the camerawoman, defendant's wife.

Defendant and Benzing appear to be shouting in the background, while defendant's wife asks "Torrey" to get her the phone. The camera is left pointing to the ground as defendant's wife makes a phone call stating her husband had been attacked, and gives their location. The file ends with the defendant's wife running as she holds the camera to the ground, while swearing at someone (presumably Benzing).

The second video file shows part of the video in People's A, defendant holding Benzing in an arm lock, and continues after People's A ended. Defendant's wife tells officers that defendant placed Benzing under citizen's arrest and Benzing hit him, causing defendant "to take him down." Benzing next tries to get up; defendant tells him to "sit still, I will put you on your face again." Defendant increases the pressure on the arm lock and pushes Benzing to the ground, causing Benzing to say "my arm hurts." Defendant replies, "quit moving around," as Benzing cries out in pain and screams for help. Defendant then continues to maintain the arm lock, and Benzing stops screaming after several seconds. The last 3 minutes of the 6-minute and 36-second video consist of defendant's wife and Benzing giving their respective versions of the incident over a cell phone, all while defendant maintains the arm lock over Benzing, who remains on the ground throughout the video. The last two files are very brief, showing the ground and a deputy's feet in one file, and a desk in the other.

Using defendant's version of the incident, defendant placed Benzing under citizen's arrest and used force to detain Benzing because he was resisting. Even assuming defendant properly detained Benzing pursuant to citizen's arrest, use of excessive force would render the arrest unlawful (*People v. Olguin* (1981) 119 Cal.App.3d 39, 45) and therefore false imprisonment (§ 236 ["False imprisonment is the unlawful violation of the personal liberty of another"].) Here, there is evidence excessive or unreasonable force was used in making the citizen's arrest. Defendant admits he took

9

Benzing to the ground and used an arm lock to detain Benzing.  There also is evidence Benzing sustained serious injuries as a result of the detention.  Based on the record, defendant has not met his burden of showing there is no reasonable cause to believe defendant committed assault by means likely to produce great bodily injury, battery with serious bodily injury, and false imprisonment by violence.  We conclude the trial court correctly denied defendant's petition.

DISPOSITION

The judgment is affirmed.

            HOCH            , J.

We concur:

            RAYE            , P. J.

            ROBIE            , J.